UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEBORAH BIEGALSKI, | : |
| Plaintiff, | : Civil No. 14-6197 (RBK/KMW) |
| v. | : **OPINION** |
| AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA and FARMERS INSURANCE COMPANY OF FLEMINGTON, | : |
| Defendants. | : |

**KUGLER**, United States District Judge:

This lawsuit arises from a dispute regarding an insurance claim resulting from damage to the house of Plaintiff Deborah Biegalski ("Plaintiff" or "Biegalski") caused by Superstorm Sandy. Plaintiff brings claims against her homeowner's insurance company, Defendant Farmers Insurance Company of Flemington ("Defendant" or "Farmers"). Presently before the Court is Farmers' Motion for Summary Judgment ("Defendant's Motion" or "Farmers' Motion") [Dkt. No. 28]. For the reasons that follow, Farmers' Motion will be **GRANTED**.

**I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

On October 29, 2012, Hurricane Sandy made landfall in southern New Jersey, and Plaintiff's home sustained damage. (Def.'s Statement of Material Facts ("DSMF") [Dkt. No. 30-2] ¶ 1; Pl.'s Statement of Material Facts ("PSMF") [Dkt. No. 29-1] ¶ 1.) Plaintiff filed a claim with Farmers under her homeowner's policy (Def.'s Ex. A [Dkt. No. 28-5] (the "Policy"))

---

[1] The Court recites those facts relevant to deciding the pending motion for summary judgment, and resolves any disputed facts or inferences in favor of Plaintiff, the non-moving party. *See Trinity Indus., Inc. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 134–35 (3d Cir. 2013).

1

(DSMF ¶ 1; Compl. [Dkt. No. 1] ¶¶ 21, 27, 29.)[2]  Plaintiff also filed a claim under her flood insurance policy with Defendant American Bankers Insurance Company of Florida ("American Bankers").  (Compl. ¶¶ 20, 27, 29.)

Plaintiff and Farmers then disputed the amount of damage caused to Plaintiff's home that was covered under the Policy.  (PSMF ¶ 2.)  Farmers had an inspector, Jeremy Richardson of Insurance Claims Adjusters, Inc., inspect Plaintiff's home on December 1, 2012, and in a detailed assessment, determined that the wind damage resulted in $1,285.99 worth of repairs to Plaintiff's home.  (DSMF ¶ 2; Def.'s Ex. G [Dkt. No. 28-11] (the "Initial Assessment").)  By letter on December 19, 2012, Farmers informed Plaintiff that because the loss was below the $2,000.00 deductible of her policy, her claim was denied.  (DSMF ¶ 4; Def.'s Ex. B [Dkt. No. 28-6] (the "December 2012 Letter").)  In the December 2012 Letter, Farmers advised Plaintiff that if she wanted to file a court claim based on that denial, she was required to do so within a year of the letter.  (*Id.*)

Farmers was informed by Alliance Adjustment Group, Inc. ("Alliance") on May 31, 2013 that Alliance would be representing Plaintiff, and requested to be contacted to inspect the property.  (DSMF ¶ 5; Def.'s Ex. J [Dkt. No. 28-14].)  Farmers conducted a re-inspection of Plaintiff's property on May 19, 2013,[3] conducted by Mr. Richardson again, and with a representative from Alliance present.  (DSMF ¶ 6.)  There was no change found in the amount of loss.  (*Id.*)  Farmers sent Plaintiff a letter on June 25, 2013 informing her that the $1,285.99

---

[2] The Policy submitted by Farmers is actually for a different term than would have covered the Sandy damage.  The submitted document states that the policy term is "12:01 A.M. Standard Time from 03/26/2014 to 03/26/2015."  (Policy at 1.)  Neither party disputes the applicability of the relevant language from the Policy, however, so the Policy submitted will govern.

[3] The Court is somewhat confused by the timing of these events, but has no contrary evidence regarding the dates.

amount of loss was still below the $2,000.00 deductible, and including the same language advising Plaintiff of the one-year limitation on bringing a court claim.  (DSMF ¶ 6; Def.'s Ex. C [Dkt. No. 28-7] (the "June 2013 Letter").)

Plaintiff, through Alliance, invoked the appraisal provision under her policy on June 28, 2013, three days after the June Letter was sent.  (PSMF ¶ 3; Pl.'s Ex. A [Dkt. No. 29-3] (the "Appraisal Letter").)  The Appraisal Letter included a request of Farmers that the appraisal "include both the scope and cost of repairs" as opposed to just the price difference of the property.  (*Id.*)  On July 8, 2013, Farmers responded that it would participate in appraisal, but that Plaintiff needed to choose another appraiser because it did not consider Alliance to be impartial.  (PSMF ¶ 4; Pl.'s Ex. B [Dkt. No. 29-4].)  Farmers did not respond to the request regarding scope and cost of repairs.  (Pl.'s Ex. B.)  On July 24, 2013, Alliance informed Farmers that it was no longer representing Plaintiff.  (DSMF ¶ 7; Def.'s Ex. D [Dkt. No. 28-8].)

Plaintiff filed the instant suit against both Farmers and American Bankers on October 7, 2014.  (*See* Compl.)  Plaintiff brought breach of contract claims against both insurers, as well as claims for breach of good faith and fair dealing and claims under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -195 (the "NJCFA") against Farmers.  (*See id.*)  Farmers answered the Complaint on December 17, 2014 (*see* Farmers Answer [Dkt. No. 4]) and American Bankers answered on January 6, 2015 (*see* American Bankers Answer [Dkt. No. 10]).  Thereafter, Plaintiff's case was stayed on March 13, 2015 as part of the District of New Jersey's district-wide management of the Hurricane Sandy cases.  (Mar. 13, 2015 Order [Dkt. No. 12].)  On August 28, 2015, Plaintiff's counsel reported the case as settled to the Court.  (Kublanovsky Decl. [Dkt. No. 21].)  The case was then dismissed on September 18, 2015 with the right to reopen the case within 120 days of the dismissal should the parties fail to consummate the

settlement. (Sept. 18, 2015 Order [Dkt. No. 22].) Plaintiff's counsel notified the Court on October 8, 2015 that the case had only settled as to American Bankers, and not as to Farmers, and requested the Court reinstate the suit. (Boohaker Letter [Dkt. No. 23].) The Court then ordered the case reopened. (Oct. 13, 2015 Order [Dkt. No. 24].) Once the case was reopened, Plaintiff and American Bankers filed a stipulation of dismissal, leaving Farmers as the only party to the suit. (Nov. 9, 2015 Stipulation [Dkt. No. 27].) This motion for summary judgment followed.

## II.   JURISDICTION

American Bankers is a "Write Your Own" carrier participating in the National Flood Insurance Program. Pursuant to 42 U.S.C. § 4072, this Court had original jurisdiction over all claims related to the policy issued by American Bankers, and all claims against Farmers fell within this Court's supplemental jurisdiction under 28 U.S.C. § 1367. With the dismissal of American Bankers, the Court must reexamine its jurisdiction to hear the claims against Farmers.

No independent basis for jurisdiction exists over the claims against Farmers. Farmers is a New Jersey corporations with its principal place of business located in New Jersey. (Compl. ¶ 13.) Therefore, there is no diversity between Plaintiff and Farmers, so 28 U.S.C. § 1332 cannot provide a basis for jurisdiction. Additionally, Plaintiff makes no claims against Farmers "under the Constitution, laws, or treaties of the United States," so 28 U.S.C. § 1331 cannot provide a basis for jurisdiction. Thus, the only basis for jurisdiction over the claims against Farmers is the continued exercise of this Court's supplemental jurisdiction under 28 U.S.C. § 1367.

"[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an

affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)) (emphasis added by quoting source). In this case, because the basis of Farmers' Motion is that Plaintiff's claim is time barred, judicial economy and fairness counsel that the Court should exercise jurisdiction over the claims against Farmers.

### III.   LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). A genuine dispute of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex*, 477 U.S. at 322–23. A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 252. Even if the facts are undisputed, a disagreement over what inferences may be drawn from the facts precludes a grant of summary judgment. *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).

The nonmoving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). The court's role in deciding the merits of a summary judgment motion is to determine whether

there is a genuine issue for trial, not to determine the credibility of the evidence or the truth of the matter.  *Anderson*, 477 U.S. at 249.

## IV.  DISCUSSION

### A.  Procedural Issues

Plaintiff first opposes Farmers' Motion on the grounds that Farmers failed to comply with Local Civil Rule 56.1(a).  (Pl.'s Opp. at 4.)  The rule provides in pertinent part that "[a] motion for summary judgment unaccompanied by a statement of material facts not in dispute *shall* be dismissed. . . . Each statement of material facts shall be a *separate* document (not part of a brief) . . . ."  L.Civ.R. 56.1(a) (emphases added).  The Court is loath to encourage noncompliance with the Local Civil Rules, but in this instance will excuse Farmers' failure to comply, as Farmers remedied the situation by providing a separately numbered statement of material facts that duplicated the text of the facts section from Farmers' initial moving brief and cites to relevant documents in the record.  However, all future filings must strictly comply with the Local Rules of this Court.

Plaintiff also challenges Farmers' ability to argue that her NJCFA claims are ripe for judgment in that they failed to raise it in its moving brief.  (Pl.'s Opp. at 5–6.)  The Court disagrees that Farmers did not move for judgment on her NJCFA claims in its moving brief; Farmers sought dismissal of the entire complaint with prejudice, not just the claims sounding in contract.  (*See* Def.'s Mot. Br. at 11.)  Plaintiff brought up the applicability of the NJCFA to the instant claims for the first time in her own opposition brief, and so Farmers was entitled to respond to those issues in its reply brief.  Regardless, Farmers raises the time limitations issue for all claims in the first instance in its moving brief.  Therefore, the Court may proceed to assess

6

whether a limitations defense is appropriate here and whether Farmers is entitled to summary judgment on that defense.

### B.     Statute of Limitations Defense

Farmers seeks summary judgment on the basis that Plaintiff's contract claims are time barred.  (*See* Def.'s Mot. Br. at 8–11.)  Plaintiff responds that Farmers never unequivocally denied her claims such that the limitations period began to run.  (*See* Pl.'s Br. at 6–7.)  She further responds that even if the period did begin to run, she is entitled to equitable tolling because of Farmers' actions in rejecting her selected adjuster.  (*See id.* at 7–9.)  For the reasons that follow, the Court disagrees with Plaintiff and finds her claims time barred.[4]

#### 1.     One-Year Limitations Period Applies

In New Jersey, the six-year statute of limitations for contract actions generally governs insurance actions as well.  *See* N.J.S.A. 2A:14-1 ("Every action at law . . . for recovery upon a contractual claim or liability . . . shall be commenced within 6 years next after the cause of any such action shall have accrued.").  Claims under the NJCFA are subject to the same six-year statute of limitations.  *See id.*  However, the parties to a contract may shorten the limitations period, and cannot then avail themselves of a longer limitations period.  *Gahnney v. State Farm Ins. Co.*, 56 F. Supp. 2d 491, 495 (D.N.J. 1999) (citing *James v. Federal Ins. Co.*, 5 N.J. 21, 24 (1950)); *see also Martinez-Santiago v. Public Storage*, 38 F. Supp. 3d 500, 506–07 (D.N.J. 2014) (collecting cases and remarking that "New Jersey courts, including courts in this District, have upheld reasonable contractual limitations provisions of one year or less when the applicable

---

[4] Because the Court will be dismissing the complaint as time barred, the Court need not reach the issue of whether the NJCFA applies to this type of insurance claim, and expressly does not decide that issue.

statutes of limitations exceeded those time frames," even though the court ultimately found the limitation unreasonable).

Here, Farmers incorporated into the Policy a one-year statute of limitations that appears to have been modeled after the statutory fire insurance policy language, but is not identical. (*See* Policy at 4 ("No action may be brought against *us* . . . unless brought within 12 months after *our* denial of either the entire claim or that part of the claim in dispute . . . ."); Def.'s Mot. Br. at 8–10); *see also* N.J.S.A. 17:36-5.20 ("Suit. No suit or action on this policy for the recovery of any claims shall be sustainable in any court . . . unless commenced within twelve months next after inception of the loss.")

Farmers argues that the limitations period under the policy is identical to the limitations period under the statutory fire insurance policy language. (*See* Def.'s Mot. Br. at 8–10.) This overlooks the crucial difference between the Policy and the statutory language—the date from which the limitations period is measured. Under the fire insurance policy statute, the limitations period "run[s] from the date of the casualty but . . . [is] toll[ed] . . . from the time an insured gives notice until liability is formally declined." *Peloso v. Hartford Fire Ins. Co.*, 56 N.J. 514, 520 (1970); *see also Solomon Lieberman & Chevra Lomdei Torah v. Interstate Fire & Cas. Co.*, 768 F.2d 81, 82 (3d Cir. 1985). By the language of the Policy, however, the limitations period runs from the "denial of either the entire claim or that part of the claim in dispute." (Policy at 4.) With this difference in the plain language, Farmers is incorrect regarding the limitations period.

Reading the Policy, the Court finds that any claim under the Policy and any NJCFA claim related to the Policy is subject to the general six-year limitations period running from the date on which the cause of action accrued, but also is subject to a one-year limitations period running from the date on which Farmers denies the claim. No cause of action accrued later than the date

of denial, or more than five years before the date of denial. *See Ryan v. Liberty Mut. Ins.*, Civ. No. 14-6308 (WHW)(CLW), 2015 WL 4138990, at *3 (D.N.J. July 8, 2015) (finding an NJCFA claim accrued when the insurance company told the policyholder losses were not covered). Therefore, the relevant limitations period with respect to this motion is the one-year limitations period from the Policy.

### 2. The June 2013 Letter Was an Unequivocal Denial

Farmers submits that the June 2013 Letter was the final denial of the claim, and thus the one-year period began running on June 25, 2013 and ended on June 25, 2014.[5] (Def.'s Mot. Br. at 8–11.) Plaintiff argues that the June 2013 Letter was insufficient to be an unequivocal denial of her claim, and thus the limitations period did not begin to run. (Pl.'s Opp. at 6–7.)

Relying on *Azze v. Hanover Insurance Co.*, 336 N.J. Super. 630 (App. Div. 2001), Plaintiff argues that her one-year limitations period has not yet begun to run. (*See* Pl.'s Br. at 6–8.) In *Azze*, the insurance policy contained a requirement that suit be brought within one year of the loss. *Azze*, 336 N.J. Super. at 633. The insurance company sent a denial letter to the insureds that referred to being able to submit new information, and also suggested that the insureds should contact the New Jersey Department of Insurance if they were unhappy about the decision. *Id.* at 641–42. Additionally, the insureds were dealing with the insurance company on two separate claims, and the parties were engaged in negotiations long after the denial letter was sent with respect to the other claim, causing additional confusion. *Id.* at 642–43. The Appellate Division

---

[5] Farmers actually argues that the limitations period should be measured under the *Peloso* language, with the one-year period running from the date of the loss and tolled between the date of notice of loss and the denial of the claim, and so suggests the limitations period would be shortened by the eight days between when Plaintiff's loss occurred and when Plaintiff notified Farmers of the loss. (Def.'s Mot. Br. at 8–11.) As explained in Section IV.B.1, *supra*, the Court disagrees that *Peloso* applies, but the date of denial is still relevant.

held that the issues in the denial letter in conjunction with the special circumstances of the two separate claims meant the denial letter was not sufficiently unequivocal. *Id.* at 643. As a result, the court in *Azze* determined that under *Peloso*, the tolling of the one-year limitations period had not ended, and the insureds' suit was not time barred. *Id.*

Plaintiff submits that her case is analogous to *Azze*, and thus no unequivocal denial occurred, because (1) the June 2013 Letter included a reference to Farmers' Internal Appeals Panel; and (2) Farmers agreed to engage in appraisal. (Pl.'s Opp. at 6–7.)

With respect to the Internal Appeals Panel, Plaintiff attempts to analogize Farmers' internal body to the state agency referenced in the letter in *Azze*. The letter in *Azze* read: "Should you wish to take this matter up with the New Jersey State Insurance Department, you can write them at State of New Jersey Department of Insurance, Division of Enforcement and Consumer Protection . . . ." *Azze*, 336 N.J. Super. at 641. The Appellate Division in *Azze* found the language ambiguous because it "could reasonably lead a person to conclude that contact with [the Department of Insurance] was actually a prerequisite to a lawsuit" or "lead the insured to believe such a contact would result in the resolution of the claim, so as to render a lawsuit unnecessary." *Id.* at 642.

Farmers' June 2013 Letter reads: "If you do not agree with our evaluation of your claim, you may have it reviewed by our Internal Appeals Panel. A request for an appeal may be submitted, in writing, to: Farmers Insurance Company of Flemington, Internal Appeals Panel . . . ." (June 2013 Letter at 1.) The Court agrees with Plaintiff that this language is very similar to the language in the letter in *Azze*, and raises the same concerns with respect to "render[ing] a lawsuit unnecessary" that the Appellate Division had in finding the letter in *Azze* problematic. However, the Court takes well Farmers' argument that "Farmers' denial letter to

[Plaintiff] advised her of the one-year statute of limitations, whereas [the insurer's] letter in *Azze* did not." (Def.'s Reply at 6.) The June 2013 Letter very clearly informs Plaintiff, in larger font than the notice about the Internal Appeals Panel, that she was required to file an action in court within one year of the letter. (June 2013 Letter at 1.) Even if Plaintiff believed going to the Internal Appeals Panel would moot the need for a lawsuit, she was on notice by this letter that any lawsuit would indeed need to be filed within a year.

Turning to Plaintiff's allegations regarding special circumstances, the Court disagrees that agreeing to engage in the appraisal process renders the denial ambiguous. Plaintiff argues, "It is clear from Defendant's agreement to participate in appraisal that Defendant recognized that there was a dispute as to the scope and cost of covered repairs, and therefore the June 25th letter was not an unequivocal denial." (Pl.'s Opp. at 7.) This characterization is incorrect. Rather, Farmers was required to engage in the appraisal process by the language of the Policy because the parties disagreed as to the amount of loss. (Policy at 24;[6] Def.'s Reply at 8–9.) This was not a situation where the parties were negotiating between themselves how much or whether Plaintiff would get paid; this was a disagreement as to value, which meant that the parties could request a third party to settle the amount.

Viewing both of these arguments together, the Court does not believe that Plaintiff has demonstrated that *Azze* controls and that the June 2013 Letter was not an unequivocal denial. It is important to note that at no point did Farmers deny Plaintiff's claim as an uncovered loss. The

---

[6] The Policy states in Section IE Conditions, ¶ 2.F.:
> If *you* and *we* do not agree on the amount of the loss or values, either one can require that the amount of loss or values be set by appraisal. Within 30 days of receipt of a written demand for appraisal, each is to select a competent and disinterested appraiser. Each party is to then notify the other of the appraiser selected.

(Policy at 24.)

basis of the denial was the value of the loss being below the amount of the deductible, meaning no payment would be made by Farmers. The June 2013 Letter was an unequivocal denial of the claim for the reasons stated above.

### 3. Equitable Tolling Does Not Apply

Plaintiff further argues that her claim is subject to equitable tolling because of Farmers' response to her request for appraisal. (Pl.'s Opp. at 7–9.) Plaintiff claims that because Farmers asked her to hire a new appraiser that would not have an interest in the outcome, Farmers "effectively destroyed Plaintiff's contractual right and ability to invoke appraisal." (Pl.'s Opp. at 7.) This hyperbolic argument overlooks the fact that Plaintiff merely had to find another appraiser in order to engage in the appraisal process.

As a general rule, "[t]ime limitations analogous to a statute of limitations are subject to equitable modifications." *Miller v. N.J. State Dep't of Corr.*, 145 F.3d 616, 617 (3d Cir. 1998). In New Jersey, equitable tolling only applies in "narrowly-defined circumstances." *R.A.C. v. P.J.S. Jr.*, 192 N.J. 81, 100 (2007). The Appellate Division has explained that:

> Equitable tolling is traditionally reserved for limited occasions. These include: "(1) [if] the defendant has actively misled the plaintiff, (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum," with the caveat that any restrictions on tolling "must be scrupulously observed."

*Heyert v. Taddese*, 431 N.J. Super. 388, 436 (App. Div. 2013) (quoting *F.H.U. v. A.C.U.*, 427 N.J. Super. 354, 379 (App. Div. 2012)) (modification in original). "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." *Freeman v. State*, 347 N.J. Super. 11, 31 (App. Div. 2002) (citing *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998)). "Equitable tolling . . .

requires the exercise of reasonable insight and diligence by a person seeking its protection." *Villalobos v. Fava*, 342 N.J. Super. 38, 52 (App. Div. 2001).

Per the Policy, the parties were each required to select an appraiser within thirty days of the written demand for appraisal. (Policy at 24.) Plaintiff, through Alliance, sent her written demand for appraisal on June 28, 2013, three days after the June 2013 Letter. (Pl.'s Ex. A.) Ten days later, on July 8, 2013, Farmers informed Plaintiff and Alliance that she needed to choose a new appraiser because Farmers did not believe Alliance to be impartial. (Pl.'s Ex. B.) Farmers also informed them in this letter of Farmers' selection of an appraiser different from the one who had twice before evaluated Plaintiff's property. (*Id.*) On July 24, 2013, Alliance withdrew its representation of Plaintiff as her appraiser. (Def.'s Ex. D.) Neither Plaintiff nor Farmers avers that any communication took place between the parties again between that letter and the filing of the suit.

It is true that, as Plaintiff argues, the Policy does not explain what makes an appraiser impartial. (*See* Pl.'s Opp. at 7–8; *see generally* Policy.) However, this does not make Farmers' response improper. If Plaintiff disagreed, Plaintiff needed only respond saying she did not agree, and the parties would have had to proceed from that point. Instead of engaging with Farmers, Plaintiff entirely disengaged from the process, terminated her appraiser, and then did not communicate further with Farmers for over fourteen months until she filed the instant suit.

Plaintiff also complains of Farmers' failure to respond to Plaintiff's request that appraisal include the scope and pricing. (Pl.'s Opp. at 7.) However, the Initial Assessment made clear that the cost of the damage was not limited to just a diminution in value of the property, as Plaintiff's Appraisal Letter feared Farmers would do. Rather, the Initial Assessment shows the cost not only of materials to replace damaged parts of Plaintiff's property, but also labor costs. (*See*

Initial Assessment at 2–3.)  Plaintiff's Appraisal Letter even indicates that the request to define the "amount of loss" as including "the scope and the cost of repairs" was a boilerplate request, admitting, "We did not know your individual company's position or philosophy regarding Appraisal."  (Appraisal Letter at 1.)  A review of the Initial Assessment would have answered that question.

No conduct on behalf of Farmers with respect to the appraisal process denied Plaintiff any right to appraisal.  Plaintiff herself ultimately failed to comply with the Policy provisions regarding appraisal, and has not demonstrated that she falls within any of the three situations where equitable tolling is permitted.  Accordingly, Plaintiff is not entitled to any equitable tolling.

### 4. Plaintiff's Claims are Time Barred

The Court has determined that Plaintiff's claims are subject to a one-year limitations period running from the date on which Farmers denied her claim, and this limitation is the determinative limitation for both Plaintiff's contract claims and her NJCFA claim.  The Court has further determined that Farmers unequivocally denied Plaintiff's claim on June 25, 2013, marking the start of the limitations period, and that Plaintiff is not entitled to any equitable tolling of the limitations period.  Plaintiff did not file suit until October 7, 2014.  Therefore, Plaintiff's claims are time barred, and Farmers' Motion will be granted.

## V.     CONCLUSION

For the foregoing reasons, Farmers' Motion will be granted, and Judgment will be entered in favor of Defendant Farmers Insurance Company of Flemington.  An appropriate order accompanies this opinion.


Date:  April   29th  , 2016

 s/ Robert B. Kugler
ROBERT B. KUGLER, U.S.D.J.